UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-7952-CAS (RAOx) | Date | August 15, 2016 |
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Jacob Goldberg | | Peter Morrison |

**Proceedings:**   DEFENDANT CHINACACHE'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT (Dkt. 32, filed April 4, 2016)

## I.    INTRODUCTION

On October 9, 2015, plaintiff Guangyi Xu filed the instant action against defendants: ChinaCache International Holdings Ltd. ("ChinaCache" or "defendant"[1]); Song Wang ("Wang"), the company's Chief Executive Officer; Jing An ("An"), the company's Chief Financial Officer; and Ken Vincent Qingshi Zhang ("Zhang"), the company's President through August 31, 2015 (collectively, "defendants").  Dkt. 1.

On February 19, 2016, plaintiff filed the operative First Amended Complaint ("FAC").  Dkt. 27.  In the FAC, plaintiff, on behalf of himself and all others similarly situated, asserts the following claims: (1) Violations by defendants of section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act"), 5 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC, 17 CFR §  240.10b-5— Employment of Manipulative or Deceptive Devices and (2) Violations by the individual defendants of section 20(a) of the Exchange Act, 5 U.S.C. § 78t(a)— Liability of Controlling Persons. The gravamen of plaintiff's allegations is that defendants violated the federal securities laws by making false statements and material omissions about ChinaCache's transition to a new high performance cache cloud ("HPCC") distribution system during 2015.

---

[1]Only ChinaCache has been served with the complaint.  The other defendants have not joined in the motion to dismiss now before the Court.  Any reference herein to a singular defendant is meant to refer only to the moving party, ChinaCache.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      **'O'**

| Case No. | 2:15-cv-7952-CAS (RAOx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | |

Specifically, plaintiff alleges the fraud began with claims about the HPCC transition on March 26, 2015 and ended when the company disclosed issues with the adoption of the new technology on August 21, 2015.

On April 4, 2016, ChinaCache filed a motion to dismiss plaintiff's FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 32. On May 26, 2016, plaintiff filed an opposition, Dkt. 36, and on July 1, 2016, ChinaCache filed a reply, Dkt. 37. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND[2]

Plaintiff alleges the following facts in the FAC: ChinaCache is a provider of internet content and content delivery services in the People's Republic of China ("China") that offers an array of services including: web page services, file transfers, video streaming, mobile internet services, and cloud infrastructure development. FAC ¶¶ 16, 24. On November 20, 2014, Wang announced that the company had invested substantially in development of an HPCC distribution system and the new HPCC system promised to increase efficiency, stability, and speed while lowering costs. Id. ¶¶ 27-29. Plaintiff alleges based on information from former employees that the development of the HPCC platform became one of ChinaCache's most important projects, Id. ¶ 30, to which management attached a great deal of importance, Id. ¶ 31.

On February 4, 2015, the company issued a press release with a headline claiming in its title that the HPCC "Offers More Efficient Bandwidth Distribution." Id. ¶ 34. The

---

[2]Although a motion to dismiss is ordinarily limited to only the allegations in the complaint, other documents may be considered if their "'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (quoting Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998)). Here, ChinaCache has submitted a request for judicial notice of the press releases and conference call transcripts on which the complaint relies. Dkt. 33. Plaintiff has not disputed the authenticity of the exhibits submitted, therefore the Court takes judicial notice of these documents and relies on them as reflecting what was stated by defendants where noted below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-7952-CAS (RAOx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | |

press release concluded saying the "HPCC platform migrations are expected to be fully complete by the second quarter of 2015." Id.

## A. Allegedly False and Misleading Statements on March 26, 2015

On March 26, 2015, Wang issued a press release ("March press release"). In relevant part, the press release claimed:

(1) the company was "on track in completing the migration [to the HPCC] in the first quarter of 2015, we can now offer enhanced services and a more efficient network to all our customers." Id. ¶ 38.

(2) that "customers will experience faster, more reliable service, and we will benefit from higher bandwidth reuse, and greater capacity through a more balanced network system." Id.

During an earnings conference call on the same day ("March conference call"):

(1) Zhang claimed that the HPCC platform would be "fully functional" by the end of the first quarter of 2015 and that in "ongoing tests" the HPCC implementation had improved performance by "more than 60% compared to the previous platform." Id. ¶ 40.

(2) Zhang stated, "I think our platform HPCC will be fully functional in Q1 and most of our service will be crossed over during Q1 and Q2." Id. ¶ 43.

(3) An stated that the migration onto the HPCC would "continue into the first quarter of 2015." Id. ¶ 41.

(4) An concluded with earnings estimates based on the "continued migration" of customers onto the new system and by saying that "as the migration is completed" the company expected "normal revenue growth throughout the remainder of the year." Id. ¶ 42.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL           'O'

| Case No. | 2:15-cv-7952-CAS (RAOx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | |

Plaintiff alleges that the aforementioned statements on March 26, 2015 were false and misleading.  Id. ¶ 59.  Plaintiff alleges these statements were knowingly false based on information from former employees.  A former vice manager in charge of intra-business operational affairs ("FE8") claims that the HPCC system had encountered technical problems in the first quarter of 2015, including the coexistence of the old platform.  Id. ¶ 51.  A former systems engineer in ChinaCache ("FE9") notes that technical problems with the HPCC migration were the result of inadequate technical experience.  Id. ¶ 52.  Plaintiff alleges, based on information from a ChinaCache system architect at the time ("FE4"), that approximately 70% of ChinaCache's technical personnel resigned in late 2014 and early 2015, negatively impacting the HPCC migration occurring during the period.  Id. ¶ 49.

On March 27, 2015, the day after the public statements and earnings estimates outlined above, the price of ChinaCache shares traded on NASDAQ rose from $8.72 to close at $10.30.  Id. ¶ 44.  The first quarter ended four days later on March 31, 2015. Plaintiff alleges he acquired ChinaCache securities at artificially inflated prices after defendants false statements and omissions on March 26, 2015 and was subsequently damaged by defendants' corrective disclosures in August 2015.  Id. ¶ 15.

**B. Allegedly False and Misleading Statements on April 10, 2015**

On April 10, 2015, ChinaCache filed an Annual Report on Form 20-F for 2014. In that report the company stated:

> we launched and plan to continue the development of our Super-node Project, High Performance Cloud Cache, or HPCC [. . . .] We expect these projects, upon completion, to result in substantial reduction in our future operation expenses and capital expenditures on equipment but because the aforementioned technologies are relatively new, we cannot assure you that their implementation will benefit us with the cost and expense reduction as expected, or at all. Id. ¶ 64.

Plaintiff further alleges that this statement was false and misleading.  Id. ¶ 65.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL            'O'

| Case No. | 2:15-cv-7952-CAS (RAOx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | |

**C. Allegedly False and Misleading Statements on May 18, 2015**

On May 18, 2015, ChinaCache issued a press release ("May press release") announcing its first quarter earnings and guidance for the second quarter of 2015.  Id. ¶ 66.  Wang stated that as "we completed the migration to our [HPCC] and continue to invest to improve our infrastructure capabilities, we are experiencing enhanced customer satisfaction and increased new customer engagements."  Id.  The press release forecasted a 7.8% to 10.8% increase in net revenues during the second quarter as compared to the first.  Id. ¶ 67.

The company also held an earnings conference call on May 18, 2015 that accompanied its press release ("May conference call").  Id. ¶ 68.  During the call, defendants made the following relevant claims:

(1) Wang stated that the HPCC had been "completed on schedule" and "[d]uring the first quarter, the platform demonstrated a significant improvement in efficiency, leading the industry on all performance indicators."  Id.

(2) Zhang spoke during the call as well, referencing the "successful migration" to the HPCC platform and that "we can provide our clients with a more efficient and a stable network.  By end of Q1 over 90% of traffic is supported by HPCC platform now."  Id. ¶ 69.

(3) Defendant An added that the "completion of our customer migration onto the [HPCC] was better than we expected."  Id.

Plaintiff alleges that the aforementioned statements on May 18, 2015 were false and misleading.  Id. ¶ 70.  According to FE4, the company's inability to complete the migration to the HPCC resulted in lost customers.  Id. ¶ 50.  A former senior sales manager at the time ("FE5") claims that ChinaCache's customers were dissatisfied with the Company's performance migrating to the HPCC platform.  Id.  Similarly, an IT project manager ("FE6") adds that customers were unsatisfied with the migration because of the continued use of the old platform alongside the HPCC caused instability and both technical and service problems.  Id. ¶ 51.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:15-cv-7952-CAS (RAOx) | | Date | August 15, 2016 |
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | | |

**D. Defendants' Public Disclosure of Platform Issues in August 2015**

On August 20, 2015 the company announced disappointing second quarter earnings.  Id. ¶ 71.  Wang noted that the company was "currently experiencing some platform issues, which have impacted our top-line recently."  Id.  In the earnings conference call that day Zhang stated, "the coexistence of old platform and HPCC creates operation and service issue, specifically the greatest challenge was to have two platforms running simultaneously to ensure sufficient bandwidth resources for our customers."  Id. ¶ 72.  Zhang added that the HPCC was "a new technology going through a breaking-in period and we are making constant improvement.  Our team is also becoming more familiar with HPCC platform and is accumulating the experience required to once again have ChinaCache set the industry standard."  Id.  Upon disclosure of the network issues and lower than expected revenue, shares on the NASDAQ fell from $8.51 to $5.59 on August 21, 2015.

**III.   LEGAL STANDARD**

The basic elements of a Rule 10b-5 claim are (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance or "transaction causation"; (5) economic loss; and (6) loss causation or a causal connection between the material misrepresentation and the loss.  Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965.

A federal securities fraud suit is also subject to the demanding pleading requirements of the Private Securities Litigation Reform Act ("PSLRA").  Enacted by Congress in 1995 to provide "protections to discourage frivolous [securities] litigation," H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. at 32 (Nov. 28, 1995), the PSLRA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:15-cv-7952-CAS (RAOx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | |

strengthened the already-heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  Under the PSLRA, private actions based on allegations of material misstatements or omissions must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  In addition, the PSLRA imposes strict requirements for pleading scienter in actions brought pursuant to Section 10(b) and Rule 10b-5, requiring that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).

The Ninth Circuit, in interpreting the PSLRA, has held that "a private securities plaintiff proceeding under the [PSLRA] must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct."  In re Silicon Graphics, Inc., 183 F.3d 970, 974 (9th Cir. 1999).  In determining whether a plaintiff has sufficiently pleaded scienter, a court must consider "whether the totality of plaintiffs' allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness."  Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1230 (9th Cir. 2004) (quoting No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 938 (9th Cir. 2003)).  Moreover, "[i]n determining whether a strong inference of scienter exists, [a court] must consider all reasonable inferences, whether or not favorable to the plaintiff."  Id.

Certain statements are not actionable under the PSLRA because they fall within its safe-harbor provision.  Specifically, the Safe Harbor Provision, 15 U.S.C. § 78u-5(c), provides that defendants shall "not be liable with respect to any forward-looking statement, whether written or oral, if and to the extent that" the statement is identified as forward-looking and accompanied by meaningful cautionary statements.  Forward-looking statements include statements of "the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer."  15 U.S.C. § 78u-5(i)(1)(B).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:15-cv-7952-CAS (RAOx) | | Date | August 15, 2016 |
|---|---|---|---|---|
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | | |

## IV.   ANALYSIS

Defendant contends that plaintiff has not adequately pleaded falsity with sufficient particularity and has not adequately pleaded scienter.  In order to proceed, plaintiff must have adequately pleaded facts demonstrating both of the challenged elements.  The Court concludes that plaintiff has failed to adequately plead falsity.[3]

Whereas the FAC points generally to the numerous allegedly misleading public statements outlined above as background, in the memorandum in opposition to this motion, plaintiff has organized the statements into two categories: (1) statements about the status of the HPCC migration and (2) statements on the functionality of the new HPCC system.  For simplicity, the Court adopts those categories herein and addresses them below.

### A. Statements About HPCC Completion

Plaintiff alleges that statements from both March and May were knowingly or recklessly false and misleading insofar as they represented to the market that the HPCC system migration was near completion in March or completed by May.  Defendant contends that, considered in context, statements about the migration to HPCC could not reasonably be relied upon to mean it was 100% complete and finished.  Defendant argues that other contemporaneous statements clarified that not all traffic was migrated to the new system as of May 18, 2015, let alone by March 31, 2015.  The Court agrees with the defendant.

---

[3] The Court's analysis focuses on plaintiff's failure to adequately plead falsity. Both falsity and scienter are "generally strongly inferred from the same set of facts," which permits the court to incorporate the dual pleading requirements into a "single inquiry."  Ronconi v. Larkin, 253 F.3d 423, 429 (9th Cir. 2001).  Where allegations fail to plead falsity they similarly fail to plead a statement was knowingly or even recklessly false.  To that extent the court also concludes there is insufficient pleading of scienter without reaching the parties' other arguments in that regard.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | | **'O'** |
|---|---|---|---|---|
| Case No. | 2:15-cv-7952-CAS (RAOx) | | Date | August 15, 2016 |
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | | |

Plaintiff must allege falsity in light of "specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." Ronconi v. Larkin, 253 F.3d 423, 432 (9th Cir. 2001). A court evaluates defendants' alleged false statements in the context in which they were made, especially in regard to contemporaneous qualifying or clarifying language. In re Syntex Corp. Sec. Litig., 95 F.3d 922, 929 (9th Cir. 1996) (holding statements non-actionable where the "statement in full and in context at the time" acknowledged uncertainty). The industry also provides context insofar as the computer industry, "involves the situation where shareholders invest in an industry that is laden with risk." Id. at 933. Critically, plaintiff must "demonstrate that a particular statement, when *read in light of all the information then available* to the market . . . conveyed a false or misleading impression." In re Convergent Techs. Sec. Litig., 948 F.2d 507, 512 (9th Cir. 1991), as amended on denial of reh'g (Dec. 6, 1991) (emphasis added). Where contemporaneous statements contradict or qualify the alleged false statements, plaintiff must allege why they remain misleading despite that context. See e.g., Padnes v. Scios Nova Inc., 1996 WL 539711, at *9 (N.D. Cal. Sept. 18, 1996) (granting a motion to dismiss where publicly available information contradicted the alleged false public statement when it was made).

Plaintiff's complaint challenges numerous statements about the HPCC migration. The gravamen of the allegations are the same and they fail for the same reason: in context they could not create a false impression because they are plucked from among contradictory statements. Some of them are also protected by the PSLRA's safe harbor provision.

For example, plaintiff has pleaded that defendant's statements that the HPCC migration was complete on May 18 were false because the migration was incomplete. However, defendants themselves acknowledged on May 18 that the migration was incomplete during the conference call on which plaintiff relies. Plaintiff ignores defendants' May 18 acknowledgments that the migration was ongoing. In the May 18 press release and conference call, defendants asserted that the HPCC migration was "completed," FAC ¶ 66, "completed on schedule," Id. ¶68, and the "completion of our customer migration . . . was better than we expected," Id. ¶69. However, during the same conference call, Zhang stated:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**             **'O'**

| Case No. | 2:15-cv-7952-CAS (RAOx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | |

> We are pleased to see a successful *ongoing* transition to our cloud-based HPCC. . . .  During the first quarter, we made *further progress* on the HPCC migration work . . . .  By end of Q1, over *90% of traffic* is supported by HPCC platform now.  Ex. 6 at 4, Dkt 33 (emphasis added).

Defendant An added:

> We put a lot of effort in Q1 to launch our - to finish our HPCC migration and in Q2 we just launched the BSP platform, so that *should take us a little bit time* [sic] *to ramp up everything* and run the platform very smoothly and to fulfill the service. Id. at 7 (emphasis added).

These statements, also made on May 18, contradict the notion that migration was complete as of that day.  On May 18, defendants said the migration was "completed," FAC ¶ 66; "ongoing," Ex. 6 at 4, Dkt 33; "completed better than expected," FAC ¶ 69; "ramp[ing] up," Ex. 6 at 7, Dkt 33; "launched," Id.; "finished," Id.; "on schedule," FAC ¶ 68; and "90%" complete, Ex. 6 at 4, Dkt 33.  The particular statements on which plaintiff relies must be read in light of all the information available on that day, including defendant's contemporaneous statements.  See e.g., In re Syntex Corp. Sec. Litig., 95 F.3d at 929. The defendant's full statement on May 18 did not created a false impression that the transition to HPCC had already been successfully completed.

Instead of addressing Zhang's May 18 statements, Plaintiff has pleaded that an analogous statement in August corrected the market's false impression that the migration had already been completed.  However, Zhang had used substantially the same language to describe the migration as early as May 18.  Compare FAC ¶ 46 (Defendant Wang stated on August 21, "[a]s of today, 90% of our pages have migrated to HPCC with improved stability") with Ex. 6 at 4, Dkt 33 (Defendant Zhang stated on May 18, "[b]y end of Q1, over 90% of traffic is supported by HPCC platform now").  Any false impression created on May 18 that the migration was completed was promptly corrected by Zhang on the same day when he further explained that only 90% of traffic was supported by the HPCC.

Similarly, plaintiff alleges the ChinaCache press release on March 26, 2015 was false because it stated ChinaCache was "on track in completing the [HPCC] migration in the first quarter."  FAC ¶ 55.  However, on March 26, ChinaCache actually made four

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**           **'O'**

| Case No. | 2:15-cv-7952-CAS (RAOx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | |

statements about the HPCC migration: it was on track to be complete by the end of the first quarter, ChinaCache expected it to be complete by the end of the second quarter, it would be mostly migrated by the third quarter, and the migration was ongoing.[4]

If there is any inference of knowing falsehood regarding the phrase "on track in completing," it was unclear from the press release when the migration would be complete because the defendants gave four different estimates on March 26th.  The Court is not persuaded that one estimate that the company would finish within 5 days should be taken in isolation without also noting Zhang's contemporaneous statement that most of the migration would occur during the first and second quarter – leaving open the possibility it might extend even later without any final deadline for completion.

Additionally, forward-looking statements that are labeled as such are not actionable in this context.  15 U.S.C. § 78u-5(c).  All four completion estimates on March 26 were forward-looking statements accompanied by an appropriate label and cautionary language.  Ex. 3 at 5, Dkt. 33; Ex. 4 at 2, Dkt. 33.  As such, they fall within the safe-harbor provisions of the PSLRA.  Although the phrase "on-track" sounds in the present tense, plaintiff has not adequately pleaded why conflicting forward-looking estimates should not be considered.  See also, Institutional Inv'rs Grp. v. Avaya, Inc., 564 F.3d 242, 255 (3d Cir. 2009) (determining the phrase "on track" was still covered by the PSLRA safe harbor for forward-looking statements where it could not "meaningfully be distinguished from the future projection of which [it was] a part").

Taking plaintiff's allegation that the HPCC migration was incomplete throughout the class period between March 26 and August 20 as true, plaintiff's allegations based on the incomplete HPCC migration as of either March 26 or May 18 still fail to state a claim upon which relief can be granted because plaintiff has not adequately pleaded falsity on

---

[4] During the conference call, Zhang explained, "our platform HPCC will be fully functional in Q1 and *most* of our service will be crossed over during Q1 *and Q2*." Id. ¶ 43 (emphasis added).  Zhang also said, "[o]ur HPCC deployment project is ongoing." Ex. 4 at 9, Dkt. 33.  Wang commented, "the migration is expected to complete by the third quarter of 2015." Id. at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**              **'O'**

| Case No. | 2:15-cv-7952-CAS (RAOx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | |

which a reasonable investor could rely in light of defendants' contemporaneous statements.

### B.  Statements on the Functionality of the HPCC System

Next plaintiff alleges that statements about the functionality of the HPCC system on March 26 and May 18, 2015 were knowingly false and misleading.  In regard to these statements, defendant contends that they were puffery and that plaintiff has not adequately pleaded their falsity.  Again, the Court agrees with defendant.

Statements are not actionable if they are "generalized, vague and unspecific assertions, constituting mere 'puffery' upon which a reasonable consumer could not rely." Glen Holly Entm't, Inc. v. Tektronix, Inc., 352 F.3d 367, 379 (9th Cir. 2003) (citing Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc., 911 F.2d 242 (9th Cir. 1990)). The Ninth Circuit has found the phrases "best technology, lower rates, and better customer service," to be corporate puffery that are not actionable.  Cook, Perkiss & Liehe, Inc., 911 F.2d at 246.  In contrast, "[s]tatements by a company that are capable of objective verification are not 'puffery' and can constitute material misrepresentations."  Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 606 (9th Cir. 2014).

Even if statements are not puffery, plaintiff must still plead that they were false when made with some specificity.  General pleadings that allege "significant" or "difficult" problems and "inefficiencies" confronting a company must allege that those obstacles existed at the time defendants' statements were made and *specifically how* they show defendants' statements to be false at the time.  Ronconi v. Larkin, 253 F.3d 423, 432 (9th Cir. 2001).  Otherwise, a court "cannot discern what statements the complaint says were false or misleading nor the basis for concluding they were made intentionally or with deliberate recklessness."  Id.  The existence of "kinks" does not make positive statements about software false. "If that were the case, the federal securities laws would prevent software companies from making any positive statements about new software."  In re Siebel Sys., Inc. Sec. Litig., 2005 WL 3555718, at *4 (N.D. Cal. Dec. 28, 2005) (Breyer, J.); See also, In re Autodesk, Inc. Sec. Litig., 132 F. Supp. 2d 833, 840 (N.D. Cal. 2000) (finding no allegations "regarding the specific nature of the bugs or the technical difficulties, or their impact on product development").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | | **'O'** |
|---|---|---|---|---|
| Case No. | 2:15-cv-7952-CAS (RAOx) | | Date | August 15, 2016 |
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | | |

Regarding the HPCC's functionality, plaintiff alleges that statements gave a false impression about how well the system was working.  Plaintiff alleges ChinaCache created a false impression because:

(1) ChinaCache "experienced significant problems with [HPCC's] development," FAC ¶ 49;

(2) "70% of ChinaCache's technical personnel [resigned in] late 2014 and early 2015," Id.;

(3) the "technical personnel drain . . . negatively impacted the HPCC migration," Id.;

(4) ChinaCache "continued to use the old platform and the HPCC platform which caused instability and both technical and service problems," Id. ¶ 51;

(5) "the migration to HPCC encountered technical problems in the first quarter of 2015," Id.; and,

(6) "the technical problems which the HPCC migration encountered had resulted from a 'shortage of technical experience,'" Id. ¶ 52.

However, none of the above allegations contradict what defendants said in March and May.

For example, plaintiff argues the March press release was false when it stated, "we can now offer enhanced services and a more efficient network to all our customers."  FAC ¶ 38.  However, claims to "enhanced service" or being "more efficient" are too vague to be more than non-actionable puffery.  It is unclear, and plaintiff does not plead, what "enhanced" and "more efficient" are understood to mean in the industry.  Absent some specific meaning, they are vague and analogous to statements deemed puffery in Cook. Cook, Perkiss & Liehe, Inc., 911 F.2d at 246 ("best technology, lower rates, and better customer service"); see also, Lloyd v. CVB Fin. Corp., 811 F.3d 1200 (9th Cir. 2016) (holding the phrase "overall quality . . . is sound" and the assertion that a company's credit metrics "'are superior' to those of its peers" were puffery).  A "mildly optimistic,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-7952-CAS (RAOx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | |

subjective assessment hardly amounts to a securities violation." In re Cutera Sec. Litig., 610 F.3d 1103, 1111 (9th Cir. 2010).

In the March conference call, Zhang said that "[f]rom our ongoing tests, our network performance has improved by more than 60% compared to the previous platform." Id. at ¶ 40.  To the extent this *might* be subject to objective verification, plaintiff has failed to plead facts showing it was false.  None of plaintiff's allegations purport that the HPCC was performing worse than the prior network or anything other than 60% better.  As in Ronconi, allegations like "negatively impacted" and "technical problems" are too general to satisfy the pleading requirement that they relate to the alleged false statement somehow.

In this regard, plaintiff's reliance on Reese v. Malone, 747 F.3d 557 (9th Cir. 2014), is misplaced.  After an oil spill, the plaintiff in Reese alleged that the claim of a "low manageable corrosion rate" in an oil transit line was false.  Id. at 569.  To plead falsity, plaintiff alleged specific documents showing an objectively high corrosion rate at the time the company claimed it was low.  Id. at 570.  This contradiction made it "self-evident" that the statement was misleading.  Id.

Taking plaintiff's allegations as true, it is far from "self-evident" that defendants' May 18 and March 26 statements were false.  Plaintiff is not required to point to documents existing at the time, but plaintiff's allegations must at a minimum show reality to be something other than the impression given by defendant.  The Court is not persuaded that it is misleading to say the HPCC is an improvement over its predecessor while technical issues with the HPCC existed and persisted.  There are no allegations showing what and when specific technical issues arose and that those existing in March or May prevented the HPCC from being an improvement over ChinaCache's previous system.  Plaintiff's allegations pointing to similar statements by defendant similarly fail.

Regarding the functionality of the HPCC system, defendants state in the company's April 10, 2015 Form 20-F, "because the [HPCC and Super-node project] are relatively new, we cannot assure you that their implementation will benefit us with the cost and expense reduction as expected, or at all."  FAC ¶ 64.  In the May 18 conference call, An explained, "[w]e still have work to do and need a little bit more time to continue all of our optimization efforts for these major initiatives."  Ex. 6 at 6, Dkt. 33 (referring to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-7952-CAS (RAOx) | Date | August 15, 2016 |
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | |

HPCC migration and BSP Platform launch). In this context plaintiff has not adequately pleaded falsity or that defendant knowingly created a false impression about the HPCC's functionality.

Next plaintiff alleges that ChinaCache's press release in May was false when it claimed, "we are experiencing enhanced customer satisfaction and increased new customer engagements." FAC ¶ 66. Plaintiff comes closest to stating a claim against this assertion. Plaintiff alleges that stability problems caused customers to abandon ChinaCache, FAC ¶ 70, and that a material number of customers were displeased, Id. ¶ 7. "[C]ustomers were dissatisfied with the Company's performance migrating to the HPCC platform," Id. ¶ 50, and "were unsatisfied with the migration process because during the migrations, ChinaCache continued to use the old platform and the HPCC platform which caused instability and both technical and service problems," Id. ¶ 51.

The alleged false statement is in Chinacache's May press release, in which Wang said:

> [a]s we completed the migration to our High Performance Cloud Cache Platform and continue to invest to improve our infrastructure capabilities, we are experiencing enhanced customer satisfaction and increased new customer engagements, including CreditEase and Taikang Life. Customers are pleased with the introduction of our MPlus mobile intelligence aware solution, and our SMS (Smart Media Server) live streaming platform.
> Ex. 5 at 1, Dkt. 33.

In context, the claim to "enhanced customer satisfaction," standing alone, is too vague to be objectively verified. The public comment is not inconsistent with the company also receiving some customer complaints nor does it clearly tie "enhanced" satisfaction to the HPCC migration specifically. Instead it explicitly mentions only two pleased customers and discusses customer satisfaction with other programs. Elsewhere, analogous comments have been deemed non-actionable puffery and "feel good" statements. Wozniak v. Align Tech., Inc., 850 F. Supp. 2d 1029, 1036 (N.D. Cal. 2012) (concluding that the phrase "so far we're getting really great feedback" was non-actionable puffery). This Court similarly concludes that a claim to "enhanced customer satisfaction" is non-actionable puffery.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-7952-CAS (RAOx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | |

Even if it were objectively verifiable, plaintiff has made no allegations about *when* customers became disatisfied with the HPCC service or the *scale* of the disatisfaction at the relevant time.  Plaintiff's allegations from former employees sound only in generalities about customer disatisfaction.  Nothing in the allegations addresses whether and why defendant knew or had reason to know customers were disatisfied *on May 18, 2015*, when defendants made the alleged false statement.

Accordingly, plaintiff's allegations regarding the HPCC's functionality like those regarding completion of the migration to the HPCC system fail to adequately plead falsity.

Having reviewed the allegations in full and examined all the alleged false and misleading statements contained in the complaint, the Court concludes that plaintiffs have failed to plead allegations showing the elements of their 10(b) claim against ChinaCache.[5]

## V.    CONCLUSION

In accordance with the foregoing the Court **GRANTS** without prejudice defendant's motion to dismiss plaintiff's first amended complaint.  Plaintiff is hereby granted **thirty (30) days** in which to file an amended complaint addressing the

---

[5]The Court has focused this analysis on the categories of statements raised by the plaintiff in their opposition to the motion to dismiss.  In his complaint, plaintiff alleges myriad false and misleading statements, many of which were unaddressed in briefing by either party, and only some of which the Court has addressed specifically and directly here.  For instance, plaintiff alleges that statements in ChinaCache's April 10, 2015 Form 20-F were false and misleadings, including the claim "because the [HPCC and Super-node project] are relatively new, we cannot assure you that their implementation will benefit us with the cost and expense reduction as expected, or at all."  FAC ¶ 64.  Plaintiff has not alleged facts showing such a cautionary acknowledgement to be misleading.  The Court has concluded that the other allegations in the complaint fail to state a claim for the same reasons as those discussed, namely: they are forward-looking; they were non-actionable puffery; or plaintiff has failed to specifically allege a basis for believing they were false when made.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:15-cv-7952-CAS (RAOx) | Date | August 15, 2016 |
|----------|--------------------------|------|-----------------|
| Title | GUANGYI XU V. CHINACACHE INTERNATIONAL HOLDINGS LTD., ET AL. | | |

deficiencies identified herein.  Failure to file an amended complaint may result in dismissal with prejudice.

  IT IS SO ORDERED.

|  | 00 | : | 20 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |